GROVER L. COVINGTON, Chief Judge.
Plaintiff appeals the judgment of the trial court cancelling a scheduled sheriffs sale on certain property[1] against which he was attempting to enforce a judicial mortgage. The judgment, granted in favor of Seviria and Chinal Young, who presently own the property, also permanently enjoins plaintiff from asserting the judicial mortgage against the property as to all present or future owners except for the named defendant, James A. Watson (should he ever again acquire the property). We affirm the judgment of the trial court for the reasons discussed below.
*793 The facts are not in dispute. Plaintiff had obtained a money judgment against defendant Watson on February 24, 1960, which was duly recorded in the mortgage records of East Baton Rouge Parish on the same date. On February 23, 1970, he filed suit to revive the judgment, but the order doing so was not rendered and signed until January 27, 1975. This second judgment was then recorded on January 28, 1975, in the mortgage records, nearly 15 years after the first inscription. On July 3, 1984, plaintiff filed another petition to revive the judgment, which was rendered on November 8, 1984, and duly recorded. He thereafter obtained a writ of fieri facias and the property in question was seized for sheriff’s sale.
In the time between 1960, when plaintiff first obtained the judgment against defendant, and 1985, when the property was seized under the writ of fieri facias, the property had changed hands several times. In 1968, defendant sold his interest in the property to his former wife, Bertha Harris. In 1978, Mrs. Harris sold it to Arnold and Clara Easterly, who in turn sold it to the Youngs on October 29, 1980.
Appellant contends that the filing of suit on February 23, 1970, his initial attempt to revive the February 24, 1960, judgment, interrupted prescription as to the judicial mortgage inscribed in the mortgage records. He further contends that the revived judgment of January 27, 1975, which was recorded in the mortgage records on January 28, 1975, constituted a judicial mortgage against the property as to third purchasers subsequent to that date.
Both of these contentions are in error. The applicable provisions in our Civil Code, Code of Civil Procedure, and jurisprudence clearly separate into two distinct areas the single prescriptive issue presented by plaintiff. These are (1) the validity of the judgment itself as affected by prescription, and (2) the validity of the judicial mortgage as determined by our requirements regarding reinscription. These two issues are governed by separate provisions in our law, and different consequences result from the laws governing each. Therefore, we will treat each issue separately.
I. Validity of the Judgment
Former Civil Code Article 3547[2], which was in effect at the time of the pertinent events in this case, provided:
A money judgment rendered by a court of this state is prescribed by the lapse of ten years from its signing, if rendered by a trial court, or from its rendition if rendered by an appellate court.
An action in a court of this state to enforce a money judgment rendered by a court of another state, or of a possession of the United States, or of a foreign country is barred by the lapse of ten years from its rendition; but no such judgment is enforceable in this state if it is prescribed, barred by the statute of limitations, or otherwise unenforceable under the laws of the jurisdiction where it was rendered.
Any party having an interest in a money judgment may have it revived before it prescribes, as provided in Article 2031 of the Code of Civil Procedure. A judgment so revived is subject to the prescription provided by the first paragraph of this artcle. An interested party may have a money judgment rendered by a court of this state revived as often as he may desire.
Therefore, within ten years of the signing of a judgment, the judgment creditor must follow the procedure set forth in LSA-C.C.P. Art. 2031, which states:
A money judgment may be revived at any time before it prescribes by an interested party in an ordinary proceeding brought in the court in which the judgment was rendered.
The judgment debtor shall be made a defendant in the proceeding to revive the judgment, unless he is dead, in which event his legal representative or legal successor shall be made a defendant.
A judgment shall be rendered in such a proceeding reviving the original judg *794 ment, unless the defendant shows good cause why it should not be revived.
In this instance, appellant did follow the requirements of Article 2031 each time he attempted to revive the judgment by instituting suit in ordinary proceedings before the ten-year period had lapsed. Specifically, in the first revival action, filed February 23, 1970, to revive the judgment of February 24, 1960, appellant successfully interrupted the prescription of Civil Code Article 3547 by virtue of former LSA-R.S. 9:5801[3], then in effect. Section 5801 provided that filing of a suit in a court of competent jurisdiction and venue interrupted prescription on the cause of action therein. Therefore, although the decree reviving the February 24, 1960, judgment was not rendered and signed until January 27, 1975, prescription on the judgment was interrupted and the revived judgment continued to be valid and enforceable. The second timely revival of November 8, 1984, also maintained the validity and enforceability of the initial money judgment against the defendant.
II. Validity of the Mortgage Inscription
As we stated earlier, the validity of the inscription of the judgment in the mortgage records so as to constitute a judicial mortgage is independent of the question of the validity of the judgment and underlying claim. LSA-C.C. Article 3357. Thus, although we have declared the money judgment in appellant’s favor against defendant Watson to be still viable, this holding in no way settles the question of whether appellant may execute this judgment against the Youngs by virtue of the reinscriptions of judgment he effected.
In a recent similar case by our brethren in the Fifth Circuit, Master Credit Plan, Inc. v. Angelo, 437 So.2d 1201 (La.App. 5th Cir.1983), the court succinctly reviewed the provisions in our law governing inscriptions of judgments.
[0]ur law has provided some methods by which a judgment becomes enforceable and a money debt may be collected.-... [OJne of the benefits granted a judgment creditor is that in certain cases the judgment may also have the effect of a judicial mortgage. As defined in Civil Code article 3321 a judicial mortgage takes effect from the day the judgment is recorded, C.C. article 3322, and may be enforced against all of the immovables which the debtor actually owns or may subsequently acquire. C.C. article 3328. Such mortgages are allowed to prejudice third persons only when they have been publicly inscribed in the mortgage records. C.C. article 3342. The inscription only binds the property of the debtor when it has been made in the office of mortgages for the parish where the property lies. C.C. article 3346. And unless so recorded it cannot affect third parties. C.C. article 3347. The methods and procedures for recordation are set out in C.C. article 3348, providing that any entitled person must cause the evidence of the mortgage to be recorded in the mortgage book of the parish where the property is situated. [437 So.2d at p. 1203]
The facts are clear in this case that the first reinscription of judgment took place on January 28, 1975, nearly 15 years after the original inscription on February 24, 1960, and more than 10 years from the date of the obligation, the judgment of that same date. Article 3369 of our Civil Code specifically provides for this situation, in pertinent part, as follows:
In all cases where mortgages and privileges, heretofore or hereafter recorded, secure the payment of an indebtedness, the whole of which matures less than nine (9) years from the date of the obligation, the registry preserves the evidence of such mortgages and privileges during ten (10) years, reckoning from the date of the obligation....
[[Image here]]
The effect of the registry ceases in all cases, even against the contracting par *795 ties, if the inscriptions have not been renewed within the periods of time above provided in the manner in which they were first made. In all cases the reinscription of the mortgages and privileges shall preserve their effect for ten (10) years from the date of the timely renewal, as above provided. [Emphasis added.]
Thus, the effect of the initial registry of appellant’s judgment against Watson in the mortgage records ceased ten years after the date of the obligation, or February 24, 1970, despite the fact that the judgment itself continued to be valid, as discussed earlier. Appellant’s reinscription of the revived judgment on January 28, 1975, was too late to encumber the property in question, since it had already left defendant’s hands in 1968 without any attempt by appellant to execute on his then-enforceable judicial mortgage. Since the 1975 reinscription only affected whatever property defendant owned as of January 28, 1975, or thereafter acquired (C.C. Article 3328), the Youngs acquired the subject property free of the judicial mortgage claim of appellant.
The judgment of the trial court is hereby affirmed. All costs are assessed to the appellant.
AFFIRMED.

. The property in question is described as:
THAT CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of East Baton Rouge, State of Louisiana, in that subdivision known as MONTE SANO HIGHLAND FARMS, and being designated on a map of a resubdivision of portions of Blocks 42, 43, and 44 of Monte Sano Highland Farms made by John I. McCain, C.E., said map being dated April 10, 1946, a copy of which is attached to Original 8, Bundle 1909, Official Records of the Parish of East Baton Rouge, Louisiana, as LOTS TWENTY-NINE (29) and THIRTY (30), said lots together forming a parcel of ground measuring One Hundred (100) feet front on the South side of Denham Street, by a depth of One Hundred Fifty-nine and 8/io (159.8) feet between equal and parallel lines, said property is subject to such servi-tudes as are of record and as shown on said subdivision map.

. The substance of this article is now embodied in LSA-C.C. Art. 3501.

. This statute was repealed by Acts 1982, No. 274, § 1, and its substance included in present LSA-C.C. 3462.